IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SHAKA RUSHDEE RAZULU**                                                                 **PLAINTIFF**
**ADC #127470**

v.                              No. 4:23-CV-00091-LPR-BBM

**LONNELL OQUIN SEAMSTER SR., et al.**                                    **DEFENDANTS**

## ORDER

The Court has reviewed the Recommended Disposition (RD) submitted by United States Magistrate Judge Benecia B. Moore (Doc. 33). No objections have been filed, and the time for doing so has expired. Nonetheless, as is its usual practice, the Court has conducted a *de novo* review of the RD and carefully considered the entire case record. The Court respectfully parts ways with the RD. The Court grants the Motion to Dismiss, except that the Court provides Plaintiff leave to file a First Amended Complaint.

As a threshold matter, the official capacity claims brought by the Plaintiff should have been dismissed at the screening stage. The official capacity claims amount to damages claims against the State of Arkansas.[1] Such claims are blocked by the doctrine of sovereign immunity.[2] As for the adversarial Motion to Dismiss, which addresses the individual capacity claims, the Court agrees with Defendants that the Complaint does not sufficiently allege that any particular defendant knew of, and deliberately disregarded, Plaintiff's objectively serious medical needs.[3] Here's why.

The Complaint alleges that, after being assaulted on August 31, 2021, Plaintiff was taken

---

[1] *See Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016).

[2] *Id.*

[3] *See* Br. in Supp. of Mot. to Dismiss (Doc. 8) at 3.

1

to the infirmary and treated for a nose injury.[4] The Complaint says nothing to suggest Plaintiff complained to anyone of a hand injury on August 31, 2021. The Complaint alleges that, the next day, Plaintiff filed a sick call.[5] We know nothing else at all about the sick call, except that Plaintiff "was given ace [bandage and] ibuprofen."[6] For example, we don't know what Plaintiff complained of or to whom.

Fast forward six days. The Complaint alleges that, on or before September 7, 2021, Plaintiff filed a second sick call.[7] We do not know the date of this second sick-call filing. What we do know—at least accepting the allegations as true—is that, on September 7, 2021, one or more of the medical staff x-rayed his "arm" and saw a "deformity."[8] We also know—again accepting the allegations as true—that one or more of the medical staff observed Plaintiff's "swelling," and "limited movement," and "pain."[9] We don't know which member or members of medical staff did the x-ray. And we don't know which member or members of medical staff witnessed the Plaintiff's symptoms.

In any event, someone—though we don't know who—told Plaintiff that "no clinical[] follow up was needed."[10] Then, it appears there was silence from the Plaintiff for six days. The Plaintiff does not suggest that he complained to anyone between September 7, 2021 and September 13, 2021. On September 13, 2021, Plaintiff filed an "[e]mergency grievance . . . stating [that he

---

[4] Compl. (Doc. 2) at 4.

[5] *Id*.

[6] *Id*.

[7] *Id*.

[8] *Id*.

[9] *Id*.

[10] *Id*.

2

was] still experiencing pain, lack of use, swelling, etc."[11] The Complaint does not allege who saw the grievance, who answered the grievance on September 17, 2021 (four days later), or what the answer said. We do know that, on September 17, 2021, Plaintiff was released to a transitional housing environment.[12] A few days later, Plaintiff went to UAMS, where he was diagnosed with a broken hand.[13] He was placed in a wet cast, and subsequently had surgery.[14] Someone (not identified) told him that "because [his] hand was improperly addressed [earlier], [he] would have difficulty in [the] future."[15]

As to which defendants knew what when and did (or failed to do) what when, we know nothing from the Complaint. All the Complaint alleges is that Seamster, Evans, Harris, Davis, and Hill "are the names of those medical staff involved."[16] The Complaint does not elaborate specifically on how any particular medical staff member was "involved." This is a huge and fatal deficiency, considering that each individual defendant's Section 1983 liability may only be premised on that individual's personal knowledge and action or inaction.[17] Without more specific allegations of what a particular defendant knew and did (or failed to do), there's not enough here to state a claim.

The Magistrate Judge implies that any deficiency in the Complaint can be and has been remedied by Plaintiff's Response to the Motion to Dismiss and the associated Brief in Support of

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Cf. Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. . . . To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").

that Response.[18] Even assuming the propriety of mixing allegations from an unverified Response and Brief with allegations from the Complaint, Plaintiff does still not state a viable cause of action.

The first new allegation in the Response is that Plaintiff told someone (unidentified) at the sick call encounter of September 1 or 2, that his hand had been injured in the August 31, 2021 assault as opposed to it being an old injury related to a prior surgical procedure.[19]  That new allegation doesn't identify a particular defendant and tell us what he or she knew and did or failed to do.  The second new allegation is that "Mr. Seamster failed to inquire act [sic] on essential facts that should have allowed him to make a professional judgment according to his knowledge – etc."[20]  This allegation is conclusory.  What facts did Mr. Seamster know when, and what did he not do that he should have?  There is no answer given.

The third new allegation is that "Defendants breached their duty to address [Plaintiff's serious] medical . . . need" because he "was given [an] ace-bandage for [a] broke[n] hand" and was "given instructions on back pain [instead of] hand injury."[21]  Again, this allegation fails to identify who knew what when, and did (or did not do) what when.  The fourth new allegation is that "they [the defendants] were all involved . . . because each medical personel [sic] denied me my right to proper medical care . . . because of injury signs and how injury was sustained they failed to make a[n] adequate assessment and made false statements as to how the injury occurred."[22]  This allegation is conclusory.  It does not explain what each defendant knew when, and what they failed to do when.

---

[18] Recommended Disposition (Doc. 33) at 5.

[19] Pl.'s Resp. to Mot. to Dismiss (Doc. 16-1) at 1.

[20] *Id*.

[21] *Id*. at 2.

[22] Br. in Supp. of Pl.'s Resp. to Mot. to Dismiss (Doc. 17) at 1.

4

The Magistrate Judge found it "most notabl[e]" that the Response and Brief alleged that certain medical records would support his claims.[23] But such an allegation—that documents will ultimately prove the Plaintiff's case—does nothing to satisfy the requirement at this stage to allege facts that, if proven later, create individual liability for each Defendant sued. This is not a case where the Plaintiff can't possibly allege which defendant(s) knew what when, or did (or failed to do) what when. Plaintiff was there during these events. He should be able to allege which defendant saw him, when, and what he told each of the defendants. He should be able to allege who took him to get X-rayed, and who told him that he didn't need follow-up. Certainly, he should have personal knowledge regarding each defendant to a greater extent than what he has alleged in his Complaint (or his papers responding to the Motion to Dismiss).

Although he did not request leave to amend his Complaint, this strikes the Court as the ideal circumstance in which to allow Plaintiff leave to amend his Complaint. Given the seriousness of what appears to have happened to Plaintiff, he may well have a viable claim if he can allege specific knowledge and specific conduct/omissions by one or more particular defendants. Plaintiff will have 45 days to file an Amended Complaint. If he does not do so, the Court will enter a final Judgment dismissing the case. If he does file an Amended Complaint, Defendants will be allowed to file a new Motion to Dismiss. Plaintiff is warned that filing an amended complaint renders the original complaint a nullity.[24] Accordingly, Plaintiff should include in the Amended Complaint all alleged facts and claims that he wants the Court to consider during the next motion to dismiss. To be clear, every single allegation of fact or law that the Plaintiff wants the Court to consider must be included in the Amended Complaint.

---

[23] Recommended Disposition (Doc. 33) at 5.

[24] *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000).

IT IS SO ORDERED this 20th day of March 2024.

                                                                          _____
                                                                          LEE P. RUDOFSKY
                                                                          UNITED STATES DISTRICT JUDGE